```
                                              F I L E D
                                        CLERK, U.S. DISTRICT COURT

                                           AUG 7, 2024

                                       CENTRAL DISTRICT OF CALIFORNIA
                                       BY: _____ PD _____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

March 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>CHIEN KHANG BUI,<br>  aka "Catfish,"<br>  aka "Tommy,"<br>NANGIALEY NICK WARDAK, and<br>MANDY LYNN MCGREW,<br><br>        Defendants. | No. 8:24-cr-00100-JVS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Bank Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 1344(2): Bank Fraud; 18 U.S.C. §§ 982, 1029: Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

A.  OBJECT OF THE CONSPIRACY

1.  Beginning on a date unknown to the Grand Jury, but no later than on or about February 4, 2020, and continuing through at least March 23, 2022, in Orange County, within the Central District of California, and elsewhere, defendants CHIEN KHANG BUI, also known as

("aka") "Catfish," aka "Tommy," NANGIALEY NICK WARDAK, and MANDY LYNN MCGREW, together with others known and unknown to the Grand Jury, conspired to commit Bank Fraud, in violation of Title 18, United States Code, Section 1344(2), by submitting false and fraudulent applications for home equity lines of credit ("HELOCs") using personal identifying information stolen from victims.

B.   MANNER AND MEANS OF THE CONSPIRACY

2.   The fraudulent scheme operated and was carried out in the following manner:

a.   Defendant BUI, together with others known and unknown to the Grand Jury, would obtain debit cards, bank account numbers, credit cards, home addresses, telephone numbers, and other personal identifying information ("PII") of identity theft victims, including by stealing mail.

b.   Using the Internet, defendant BUI would submit electronic applications for HELOCs to Victim Company One, an online mortgage lending business and financial institution within the meaning of Title 18, United States Code, Section 20, using victims' stolen PII.

c.   Defendant BUI would use the victims' PII to obtain lines of credit secured by the victims' actual homes, without the victims' knowledge or authorization.

d.   Using the Internet, defendant BUI linked each HELOC application to a bank account controlled by himself or others known and unknown to the Grand Jury, ensuring that any funds loaned by Victim Company One would be accessible to defendant BUI and not the victims.

e.   Defendants BUI, WARDAK, and MCGREW falsely represented to Victim Company One that they were a person associated with each application and that they were the owner of each of the houses used as collateral.  Defendants BUI, WARDAK, and MCGREW also concealed from Victim Company One that the applications were made without the consent or knowledge of the victims named in each application.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy, and to accomplish its object, defendants BUI, WARDAK, and MCGREW, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to:

Overt Act No. 1:   On February 4, 2020, defendant BUI caused an application for a HELOC in the amount of approximately $150,000 and secured by T.B.'s home to be electronically submitted to Victim Company One ("the T.B. application"), using T.B.'s PII, without T.B.'s knowledge, consent, or authorization.

Overt Act No. 2:   On February 7, 2020, defendant BUI caused a photograph of a counterfeit driver's license with T.B.'s PII and defendant WARDAK's photograph to be uploaded to Victim Company One's website and linked to the T.B. application.

Overt Act No. 3:   On February 7, 2020, defendant BUI caused a "joint borrower" to be added to the T.B. application in the name of victim B.S., T.B.'s actual wife, using B.S.'s PII.

Overt Act No. 4:   On February 7, 2020, defendant BUI caused a Citibank account held in defendant BUI's name, and controlled by defendant BUI, to be linked to the T.B. application.

1      Overt Act No. 5:   On February 10, 2020, defendant WARDAK

2   attended an online notary session in support of the T.B. application,

3   displayed the counterfeit driver's license bearing T.B.'s PII and

4   defendant WARDAK's photograph, and falsely identified himself as T.B.

5      Overt Act No. 6:   On February 10, 2020, defendant MCGREW

6   attended a separate online notary session in support of the T.B.

7   application, displayed a counterfeit driver's license with B.S.'s PII

8   and defendant MCGREW's photograph, and falsely identified herself as

9   B.S.

10     Overt Act No. 7:   On March 3, 2020, defendants WARDAK and

11   MCGREW met in person with a mobile notary in support of the T.B.

12   application, displayed their counterfeit driver's licenses, and

13   falsely identified themselves as, respectively, T.B. and B.S.

14     Overt Act No. 8:   On February 18, 2020, defendant BUI received

15   $145,631.07 in HELOC funds following approval of the T.B.

16   application, which were deposited into a Citibank account that he

17   controlled.

18     Overt Act No. 9:   From on or about February 18, 2020, to on or

19   about February 27, 2020, unknown conspirators made numerous cash

20   withdrawals from defendant BUI's Citibank account.

21     Overt Act No. 10:   On January 30, 2021, defendant BUI caused an

22   application for a HELOC in the amount of approximately $245,261 and

23   secured by H.Z.'s home to be electronically submitted to Victim

24   Company One ("the H.Z. application"), using H.Z.'s PII, without

25   H.Z.'s knowledge, consent, or authorization.

26     Overt Act No. 11:   On January 30, 2021, defendant BUI caused a

27   photograph of a counterfeit driver's license with H.Z.'s PII and

28

defendant BUI's photograph to be uploaded to Victim Company One's website and linked to the H.Z. application.

Overt Act No. 12:   On January 30, 2021, defendant BUI caused a Bank of America account held in defendant BUI's name, and controlled by defendant BUI, to be linked to the H.Z. application.

Overt Act No. 13:   On February 3, 2021, an unknown conspirator met with a notary public in Pasadena, California, displayed a counterfeit driver's license, and falsely identified himself as H.Z.

Overt Act No. 14:   On February 9, 2021, defendant BUI received $238,117.48 in HELOC funds following approval of the H.Z. application, which were deposited into a Bank of America account that he controlled.

Overt Act No. 15:   Between February 9, 2021, and February 24, 2021, defendant BUI and other unknown conspirators withdrew, transferred, or otherwise depleted the funds obtained via the H.Z. application from defendant BUI's Bank of America account.

Overt Act No. 16:   On March 12, 2022, defendant BUI caused an application for a HELOC in the amount of $124,999 and secured by H.N.'s home to be electronically submitted to Victim Company One ("the H.N. application"), using H.N.'s PII, without H.N.'s knowledge, consent, or authorization.

Overt Act No. 17:   On March 12, 2022, defendant BUI caused a photograph of a counterfeit driver's license with H.N.'s PII and Co-Conspirator One's photograph to be uploaded to Victim Company One's website and linked to the H.N. application.

Overt Act No. 18:   On March 12, 2022, defendant BUI caused a Bank of America account controlled by Co-Conspirator One to be linked to the H.N. application.

5

<u>Overt Act No. 19:</u>    On March 16, 2022, Co-Conspirator One attended an in-person notary session, presented the counterfeit driver's license with H.N.'s PII and her own photograph, and falsely identified herself as H.N.

<u>Overt Act No. 20:</u>    On March 22, 2022, Co-Conspirator One received $119,058.01 in HELOC funds following approval of the H.N. application, which were deposited into the Citibank account that she controlled.

<u>Overt Act No. 21:</u>    On March 22, 2022, at defendant BUI's direction, Co-Conspirator One withdrew $60,000 in cash from her Bank of America account and delivered the money to defendant BUI.

<u>Overt Act No. 22:</u>    On March 23, 2022, at defendant BUI's direction, Co-Conspirator One withdrew $54,000 from her Bank of America account and delivered the money to defendant BUI.

COUNT TWO

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[Defendant BUI]

On or about January 30, 2021, in Orange County, within the Central District of California, defendant CHIEN KHANG BUI, also known as ("aka") "Catfish," aka "Tommy," knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant BUI knew belonged to another person, namely, the name of H.Z., during and in relation to the crime of Conspiracy to Commit Bank Fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

COUNT THREE

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[Defendant WARDAK]

On or about March 3, 2020, in Orange County, within the Central District of California, defendant NANGIALEY NICK WARDAK knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant WARDAK knew belonged to another person, namely, the name of T.B., during and in relation to the crime of Conspiracy to Commit Bank Fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

COUNT FOUR

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[Defendant MCGREW]

On or about March 3, 2020, in Orange County, within the Central District of California, defendant MANDY LYNN MCGREW knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant MCGREW knew belonged to another person, namely, the name of B.S., during and in relation to the crime of Conspiracy to Commit Bank Fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

1                        COUNTS FIVE THROUGH SEVEN

2                          [18 U.S.C. § 1344(2)]

3                            [Defendant BUI]

4    A.    INTRODUCTORY ALLEGATIONS

5          At times relevant to this Indictment:

6          1.    The California Employment Development Department ("EDD")

7    administered unemployment insurance ("UI") benefits for residents of

8    California, including Pandemic Unemployment Assistance benefits to

9    individuals who were unemployed because of the COVID-19 pandemic

10   ("pandemic benefits").

11         2.    To qualify for UI benefits, including pandemic benefits, a

12   California resident had to submit to EDD an application for the

13   benefits; provide EDD with personal identifying information ("PII"),

14   including the applicant's name, date of birth, and social security

15   number; and certify to EDD under penalty of perjury that the COVID-19

16   pandemic had directly and adversely affected the applicant's

17   employment.

18         3.    Applications for UI benefits, including pandemic benefits,

19   could be submitted to EDD online.  An individual who applied online

20   for benefits would provide EDD with an email address ("account email

21   address") in addition to the applicant's regular mailing address

22   ("account mailing address").

23         4.    Individuals who resided outside the state of California, or

24   were deceased, were ineligible for UI benefits, including pandemic

25   benefits.

26         5.    After a person submitted an application for UI benefits,

27   including pandemic benefits, EDD would transmit an email to the

28   account email address provided on the application confirming the

                                    10

submission of the application and, thereafter, would send correspondence related to the application and the UI benefits, including pandemic benefits, to the account email address.

6.   Once EDD approved the application and granted pandemic benefits to the applicant, EDD would create a debit account ("EDD debit account") with Bank of America, NA ("Bank of America").  A debit card linked to the EDD debit account would then be mailed to the address associated with the account.

7.   EDD typically deposited UI benefits, including pandemic benefits, to the EDD debit account.  The debit card could be used to withdraw the benefits from the EDD debit account using automated teller machines ("ATMs"), including ATMs that Bank of America operated.

8.   Once approved for pandemic benefits, the recipient of the benefits would be required to periodically recertify under penalty of perjury that, among other things, the recipient was unemployed due to the COVID-19 pandemic and therefore remained eligible to receive pandemic benefits.

9.   At times relevant to this Indictment, Bank of America was a financial institution that was insured by the Federal Deposit Insurance Corporation ("FDIC").

B.   THE SCHEME TO DEFRAUD

10.  Beginning no later than in or around July 2020, and continuing until at least in or around August 2020, in Orange County, within the Central District of California, and elsewhere, defendant CHIEN KHANG BUI, also known as ("aka") "Catfish," aka "Tommy," together with others known and unknown to the Grand Jury, knowingly and with intent to defraud devised and executed a scheme to obtain

11

money in the custody and control of Bank of America, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

11.  The fraudulent scheme operated and was carried out as follows:

a.  Defendant BUI, and others known and unknown to the Grand Jury, would acquire the PII, such as the names, dates of birth, and social security numbers, of individuals ("victims") who were not eligible for UI benefits or pandemic benefits.  Defendant BUI targeted individuals with names similar to his own.

b.  Defendant BUI would maintain that PII in an Excel spreadsheet and other locations.

c.  Defendant BUI would use the victims' PII to submit fraudulent online applications to EDD for UI benefits, including pandemic benefits (the "fraudulent EDD applications").

d.  Defendant BUI would assume the victims' identities and use the victims' PII to provide materially false information to EDD on the fraudulent EDD applications, including certifying to EDD under penalty of perjury that the alleged applicants were residents of California who were unemployed as a direct result of the COVID-19 pandemic.  The alleged applicants included at least one individual who resided outside of the State of California and at least one individual who was deceased, as well as one other individual who was otherwise not eligible for UI benefits, including pandemic benefits.

e.  By submitting the fraudulent EDD applications, defendant BUI would cause EDD to:

i.  Authorize pandemic benefits to be provided to individuals who were ineligible for pandemic benefits, including

individuals who were ineligible for pandemic benefits because they resided outside the State of California or were deceased;

        ii.  Create debit accounts ("EDD debit accounts") with Bank of America in the names of third parties, including the victims; and

        iii. Cause debit cards linked to the EDD debit accounts at Bank of America ("EDD debit cards") in the names of third parties to be mailed to the addresses listed by defendant BUI on the applications, which addresses defendant BUI had access to and controlled.

      f.  After EDD approved the fraudulent EDD applications and disbursed the pandemic benefit funds to the EDD debit accounts, and Bank of America issued the EDD debit cards linked to those accounts, defendant BUI and others known and unknown to the Grand Jury would fraudulently assume the identities of the EDD debit account holders and use the corresponding EDD debit cards to make fraudulent cash withdrawals of pandemic benefits from ATMs in Orange County and elsewhere.

C.   <u>EXECUTIONS OF THE SCHEME</u>

    12.  On or about the following dates, in Orange County, within the Central District of California, and elsewhere, defendant BUI committed the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| FIVE | July 27, 2020 | Submitted fraudulent application using PII of victim C.X.B. |
| SIX | August 13, 2020 | Submitted fraudulent application using PII of victim C.B. |
| SEVEN | August 26, 2020 | Submitted fraudulent application using PII of victim C.C.B. |

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3                                        A TRUE BILL

4

5                                        /s/
                                         _____
6                                        Foreperson

7  E. MARTIN ESTRADA
   United States Attorney
8

9

10 MACK E. JENKINS
   Assistant United States Attorney
11 Chief, Criminal Division

12 ANNE C. GANNON
   Assistant United States Attorney
13 Chief, Santa Ana Branch Office

14 GREGORY S. SCALLY
   Assistant United States Attorney
15 Deputy Chief,
   Santa Ana Branch Office
16
   MELISSA S. RABBANI
17 Assistant United States Attorney
   Santa Ana Branch Office
18

19

20

21

22

23

24

25

26

27

28

                              16